UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WALTER BYRON LEWIS,

v.  Case No. 3:07-cr-112-J-33TEM
    3:10-cv-1101-J-33TEM

UNITED STATES OF AMERICA.
_____

**O R D E R**

This cause is before the Court on Walter Byron Lewis's timely-filed 28 U.S.C. § 2255 motion to vacate, set aside, or correct an illegal sentence (hereinafter "motion to vacate" or "motion"). (Doc. cv-1; cr-158). A review of the record demonstrates that the motion to vacate must be **denied.**

**PROCEDURAL HISTORY**

On May 9, 2007, Lewis was named in a one-count Indictment charging him with conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), all in violation of 21 U.S.C. §846. (Doc. cr-1). On February 2, 2008, an Information To Establish Prior Conviction was filed, enhancing the minimum penalty to twenty years imprisonment, pursuant to 21 U.S.C. §851(a)(1). (Doc. cr-63). On April 10, 2008, after a jury trial, Lewis was found guilty. (Doc. cr-100). On February 23, 2009, Lewis was sentenced to 240 months imprisonment. (Doc. cr-137).

Lewis filed a timely notice of appeal. On direct appeal, Lewis argued that the Court abused its discretion in allowing the government to impeach his testimony with a prior conviction for drug trafficking. On March 11, 2010, the United States Court of Appeals for

1

the Eleventh Circuit affirmed Lewis's judgment and conviction. (Doc. cr-157). Lewis then filed the present 28 U.S.C. § 2255 motion to vacate, set aside, or correct an illegal sentence.

## DISCUSSION

Title 28 U.S.C. § 2255 allows attack on a conviction and sentence on four grounds only: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentence was imposed without jurisdiction; (3) the sentence was imposed in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. Only jurisdictional claims, constitutional claims, and claims of error so fundamental as to have resulted in a complete miscarriage of justice warrant relief on collateral attack. *E.g., United States v. Addonizio*, 442 U.S. 178, 184-86 (1979).

Lewis seeks review of his conviction and sentence, claiming that he was denied his Sixth Amendment right to effective assistance of counsel. Ineffective assistance of counsel claims are generally reviewable only on collateral attack. *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994). Claims of ineffective assistance excuse failure to raise other claims if ineffective assistance of counsel is the cause for the failure to raise the claim. *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989).

### Ineffective Assistance of Counsel Standard

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984);

*see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). The burden is on the defendant to demonstrate that (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993). For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance must be highly deferential, and courts "must avoid second- guessing counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.' " *Id.* (quoting *Strickland*, 466 U.S. at 689). The defendant's burden in this regard, though not insurmountable, is a heavy one. *See Chandler*, 218 F.3d at 1314. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315.

To establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different. *United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Rolling v. Crosby*, 438 F.3d 1296, 1300 (11th Cir. 2006). If the defendant fails to show that he was prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining

3

whether the counsel's performance was deficient. *Strickland,* 466 U.S. at 697; *Tafero v. Wainwright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

**Specific Claims of Ineffective Assistance of Counsel**

Lewis now faults counsel for misadvising him regarding a plea offer (Ground One); for failing to advise Lewis of the admission and impact of relevant conduct at trial (Ground Two); for not allowing Lewis to testify at his suppression hearing (Ground Three); and for "abandoning" the defense strategy during opening statements (Ground Four). For the reasons stated below, these claims have no merit.

<u>Counsel's Advice Regarding Plea Offer</u>

Lewis asserts that counsel miscalculated the sentencing guidelines that would apply in the event Lewis chose to enter a guilty plea. He states that counsel advised him that his criminal history category would be a III, and his base offense level would be scored at 38, adjusted downward for acceptance of responsibility and substantial assistance to level 31, for a guidelines range of 135-168 months imprisonment. However, Lewis now notes that the base offense level calculated in the Presentence Investigation Report (PSR) was a level 32. Lewis claims that had he known his base offense level would have been a 32 (and calculating downward adjustments favorably, he would have been sentenced at a level 25 for a sentencing range of 70-87 months), he would not have proceeded to trial and would have taken a plea offer. He claims he did not do so because of counsel's erroneous calculation of his base offense level.

This claim fails because it ignores several facts, the first of which is that Lewis was facing a statutory minimum sentence of twenty years, a fact he knew well before trial. Nevertheless, at sentencing the Court found that the evidence at trial established Lewis's

4

base offense level to be correctly scored at level 36, and not 32 as suggested in the PSR. (See Doc. cr-143 [sentencing transcript] at 21.) This finding resulted in a guidelines range of 292 to 365 months. Id. Ultimately, however, the Court departed downward from this range to impose the statutory minimum sentence of twenty years, which was required pursuant to 21 U.S.C. §851. (Doc. cr-63).

Additionally, see Exhibit 1 to this order, which is a letter from the government to Lewis's former defense counsel extending a plea offer for Lewis's consideration. In that letter, reference is made to continuing witness interviews and further development of the historical case, and the prediction that the government would be able to prove that Lewis was responsible for the distribution of enough cocaine over a period of several years that his base offense level would likely be scored at level 38, an argument that led to the Court's finding that Lewis was correctly scored at a level 36. This letter is no doubt the source of counsel's sentencing representations to Lewis, which, therefore, cannot be held to be erroneous. Counsel responsibly discharged his duty to his client to make him aware of the government's intentions. Counsel did not erroneously advise Lewis of his possible exposure, and this claim has no merit.

<u>Counsel's Advice Regarding the Impact of Relevant Conduct</u>

As discussed above, Lewis was aware of the impact of relevant conduct, as he claims he discussed the guidelines calculations with his lawyer. He knew from information in the plea letter, before deciding to proceed to trial, that the amount of drugs attributed to him at trial would determine his base offense level. The basis of his previous claim was that counsel erroneously calculated Lewis's base offense level from the amount of drugs reasonably attributed to him during the conspiracy. This claim is contrary to his assertions

5

regarding information discussed when considering the plea.  This claim has no merit.

## Counsel's Alleged Failure to Allow Lewis To Testify at Hearing

Lewis claims that, but for counsel's advice, he would have testified at his suppression hearing. He cites the findings in the Report and Recommendation as evidence that, somehow, his self-serving testimony would have changed the outcome of that proceeding.

Prior to trial, defense counsel filed a motion to suppress large sums of cash seized from Lewis during two traffic stops, money which law enforcement knew to be intended for the purchase of multi-kilogram quantities of cocaine. (Doc. cr-58). This information initially came to the officers' attention through an individual named Robert Heck, who agreed to record conversations between Lewis and Heck relating to the purchase of cocaine. Based upon this information, law enforcement officers established surveillance of Lewis's residence and witnessed his leaving his house for a predetermined appointment with Heck.

The defense challenged these stops on the premise that they were pretextual, and challenged the resulting searches and seizures as non-consensual and/or without probable cause. (Doc. cr-64 at 7). To advance these arguments, counsel thoroughly cross-examined the government's two witnesses in an effort to establish that Heck's information was not credible, and that one of the officers used the smell of marijuana as a ruse to search the vehicle. The established facts illustrated that during one stop, Lewis was driving a truck with an expired tag; in another stop in which Lewis was a passenger, the vehicle had a cracked mirror. These facts led the Court to find that the stops were not pretextual. There would have been no benefit to Lewis's testifying to the contrary; in fact, counsel correctly advised Lewis that such testimony could only detrimental. Given the best case scenario, had Lewis

testified about why he had such large sums of cash, he would have reiterated his version of the facts related to the arresting officers, which versions were brought out on cross examination.

In other words, the failure of the defense's suppression arguments was not based on Lewis's failure to testify. Indeed, Lewis's doing so would have exposed Lewis to damaging impeachment, as defense counsel explained in a letter attached to Lewis. (See Doc. cv-2 at Exhibit B attached at exhibit 2 to this order). Despite Lewis's assertion to the contrary, he cannot show that there is a likelihood that, had he testified at the suppression hearing, the outcome would have been different. He has failed to establish that counsel's advice fell below constitutional standards, and this claim has no merit.

### "Abandoning" Defense Strategy During Opening Statements

Lewis claims that counsel abandoned the defense of entrapment during opening statements, and that this strategy was constitutionally infirm. During opening statements, counsel did advise the jury that Lewis was a hard-working businessman who dealt in cash and gambled. He stated that the alleged co-conspirators in this case were long-time friends of Lewis, and that one of them, having been arrested, decided to work for law enforcement and lured Lewis into a drug deal at the request of law enforcement. (Doc. cr-148). Lewis now faults counsel for referring to him as a drug dealer in his opening statement; however, such a comment was necessary to establish a defense of entrapment. Indeed, if one claims he or she is tricked into becoming involved in a drug deal, that person has to admit that fact. In other words, one cannot argue entrapment without establishing that he or she was involved in the illegal activity. Moreover, the transcript illustrates that Lewis himself, and not his counsel, abandoned the entrapment defense. During his testimony at trial, Lewis

insisted that he did not know anything about his co-conspirators being involved in the drug business, stating "I am not a nosey person. It's not my business about - - you know." (Doc. cr-129 at 214).

The Supreme Court has recently noted that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). The standard for judging counsel's representation is a deferential one; second-guessing counsel's strategy and trial performance with the benefit of hindsight is simply not allowed. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Courts give great deference to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy. *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1995). Thus, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. *Strickland v. Washington*, 466 U.S. at 690; *see also Baxter v. Thomas*, 45 F.3d 1501, 1513 (11th Cir. 1995).

It is clear in this case that Lewis himself abandoned the strategic choice of entrapment, *after* counsel suggested it in his opening statement. Instead, Lewis chose to profess what is at best deliberate ignorance of drug dealing. He maintained his innocence throughout the sentencing process. Lewis clearly advanced his own strategy, and now regrets it and wishes to fault counsel for it. Such an argument does not satisfy the rigorous legal standard necessary to establish constitutionally deficient representation.

Lewis's continued claim that he would have considered a plea offer is negated at every stage of this case. Even after the guilty verdict, when he could have accepted responsibility, Lewis steadfastly maintained his innocence, even in the face of what he now acknowledges as a strong case for the government. (See Lewis's memorandum [Doc. cv-2]

at 6.) It is clear from the record that Lewis chose his own strategy, which included testifying at trial. That strategy did not work, and he now attempts to fault counsel for it, which he cannot do. Lewis has established only that he himself made strategic errors. His claim that he would have pled guilty is directly contrary to his professed innocence. This claim has no merit.

## CONCLUSION

The record clearly demonstrates that Lewis was competently represented at trial and at sentencing. The record of the criminal case, as well as Lewis's own supplemented section 2255 motion, make clear that counsel "strategized" with Lewis, kept him apprised of plea negotiations, and discussed the impact of relevant conduct and sentencing options. Lewis has failed to establish that his Sixth Amendment right to effective assistance of counsel was violated.

Accordingly, the Court orders:

That Lewis's 28 U.S.C. § 2255 motion to vacate, set aside, or correct an illegal sentence (Doc. cv-1; cr-158) is denied. The Clerk is directed to enter judgment against Lewis and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant

has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on September 30, 2011.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

AUSA: Julie Hackenberry Savell
Walter Byron Lewis